[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 16, 2010
JOHN LEY
CLERK

No. 09-12637
Non-Argument Calendar
_____

D.C. Docket No. 07-00955-CV-T-33-TBM

SCOTT R. RUSHING,

Plaintiff-Appellant,

versus

SEAN R. PARKER, Personal Representative
of the Estate of Ernest R. Mincey,
DAVID LAST,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 16, 2010)

Before BIRCH, HULL and COX, Circuit Judges.

PER CURIAM:

Defendants Ernest R. Mincey and David Last, officers at the Polk County Sheriff's Office, misidentified and arrested Plaintiff Scott R. Rushing. The victim of a crime, Richard Wickman, reported to the Sheriff's office that a roofer he hired to repair hurricane damage to his roof had victimized him. The Plaintiff was arrested after an investigation. However, the state attorney's office later dropped the charges after it determined that the Plaintiff was misidentified and was not the perpetrator.

The Plaintiff sued the Defendants, alleging that his false arrest violated his civil rights under 42 U.S.C. § 1983. The district court granted the Defendants' motion for summary judgment based on the doctrine of qualified immunity. The Plaintiff appeals the district court's order. In sum, Rushing contends that the district court erred in granting the Defendants' summary judgment motion because the Defendants' investigation of the Plaintiff was deficient, and therefore the Defendants are not entitled to receive qualified immunity.

Section 1983 provides individuals with a federal remedy for the deprivation of rights protected by the U.S. Constitution. *Von Stein v. Brescher*, 904 F.2d 572, 578 (11th Cir. 1990). Law enforcement violates a person's Fourth Amendment rights when it arrests him or her without probable cause, and a claim arises under § 1983. *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997). Probable cause is present "when law enforcement officials have facts and circumstances within their

knowledge sufficient to warrant a reasonable belief that the suspect had committed . . . a crime." *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992) (citation omitted). The "existence of probable cause at the time of arrest constitutes an absolute bar to a section 1983 action for false arrest." *Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir. 2009) (quotations and citation omitted).

Related to probable cause in this context is the issue of qualified immunity. *See Von Stein*, 904 F.2d at 578. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, ___ U.S. ___ , 129 S. Ct. 808, 815 (2009) (quotations and citation omitted). In order to receive qualified immunity, a government official must first demonstrate that he was engaged in a "discretionary function" when he committed the alleged violations. *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1263-64 (11th Cir. 2004). Assuming the government official demonstrates that he was acting within his discretionary function, the plaintiff then bears the burden to overcome qualified immunity. *Case*, 555 F.3d at 1325. In order to defeat the government official's qualified immunity defense, the plaintiff must prove that (1) the official "violated her federal constitutional or statutory rights, and (2) that those rights

were clearly established at the time the officer acted." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008).

"In determining whether qualified immunity exists, the issue is not probable cause in fact but arguable probable cause." *Von Stein*, 904 F.2d at 579 (quotations and citations omitted); *see also Case*, 555 F.3d at 1327. A defendant need only demonstrate that arguable probable cause existed in order to be protected by qualified immunity. *Savaiko*, 117 F.3d at 1324; *see also Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004) (noting that "officers who make an arrest without probable cause are entitled to qualified immunity if there was arguable probable cause for the arrest."); *see also Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." *Case*, 555 F.3d at 1327 (quotations and citations omitted).

With these principles in mind, the question before this court is whether reasonable law enforcement officials "in the same circumstances and possessing the same knowledge as [the Defendants] could have believed that probable cause existed to arrest [the] Plaintiff." (R.1-48 at 18, quoting *Von Stein,* 904 F.2d at 579.) We answer this question in the affirmative.

4

"The essence of qualified immunity analysis is the public official's objective reasonableness, regardless of his underlying intent or motivation." *Kingsland,* 382 F.3d at 1231 (citation omitted). "The standard is an objective one, and therefore does not include an inquiry in the officers' subjective intent or beliefs." *Von Stein*, 904 F.2d at 579 (citations omitted). In fact, the Defendants' "subjective beliefs about the matter, however induced, are actually irrelevant to the inquiry." *Sevigny v. Dicksey*, 846 F.2d 953, 957 n.5 (4th Cir. 1988) (quotations and citation omitted). Although the district court set forth the correct objective standard,[1] it seemed to venture into an analysis involving the Defendants' states of mind.[2] Nevertheless, the district court's look into the subjective intents of the Defendants does not alter our view that the Defendants had at least arguable probable cause to arrest. *See Case*, 555 F.3d at 1327.

## I.

In *Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993), officers arrested a restaurant owner for allegedly violating the maximum occupancy code in his restaurant. The officers counted people in excess of the restaurant's maximum

---

[1]The district court wrote: "[t]he Court is to apply an objective standard to determine whether any officer could have found probable cause under the totality of the circumstances." (R.1-48 at 11.)

[2]For example, the district court wrote, "[i]n this case, Plaintiff has presented no evidence that Mincey's actions in failing to pursue certain leads was purposeful or that Mincey's intent was to conduct a biased investigation." (R.1-48 at 16.)

capacity (twenty-two). However, there were less than twenty-two people in the restaurant; so, there was actually no violation. The owner sued for false arrest, among other claims. The officials put forth a qualified immunity defense. This court, in affirming qualified immunity to the officers, wrote, "[h]ere, the issue is not whether the [officers'] head counts were, in fact, correct; . . . [instead, t]he issue material to qualified immunity is whether a reasonable officer in [the officers'] place–that is, in these circumstances–could have believed that more than 22 customers were present." *Id.* at 1558.

In *Rodriguez v. Farrell*, 280 F.3d 1341 (11th Cir. 2002), Joe Rodriguez, the plaintiff, alleged that officers violated his constitutional rights by arresting him pursuant to a warrant for the actual perpetrator who also used the name "Joe Rodriguez." *Id*. at 1343. The plaintiff and the other individual had many similar physical features. Nevertheless, they had several distinguishing features, including, most prominently, a difference in height: the plaintiff was 5'11", whereas the actual perpetrator was 5'6". We held, "in the context of this case, a mistaken estimate of no more than five inches does not equal a constitutional violation." *Id.* at 1348.

We agree with the Plaintiff that *Rodriguez* is not directly controlling to our facts because that case "concerned the officer's on-the-scene decision to arrest someone he mistakenly thought was the subject of an active, valid warrant, while

Mincey and Last had many months to determine the true identity of the perpetrator of the crime, and objective exculpatory evidence." (Appellant's Reply Br. at 1.) However, it is nevertheless accurate that "the principles set forth in *Rodriguez* still apply to the case at bar in that the reasonableness of the officers' decisions with respect to probable cause must be viewed in light of the totality of the circumstances surrounding the arrest." (Appellee's Br. at 29-30.)

Despite the fact that the officers in *Rodriguez* "were in the field [and] not in a police station," *Rodriguez*, 280 F.3d at 1348, officers were given constructive notice that they may be arresting the wrong person because of the height difference between the plaintiff and the actual perpetrator. Similarly, in *Cannon v. Macon County*, 1 F.3d 1558 (11th Cir. 1993), *modified*, 15 F.3d 1022 (11th Cir. 1994), the court found that the officer acted with indifference and was not entitled to qualified immunity. There, the officer was on notice that the plaintiff may not be the perpetrator because the plaintiff repeatedly maintained it was a case of mistaken identity and the description from the fugitive report did "not accurately describe the plaintiff." *Id.* at 1560.

## II.

In contrast to *Rodriguez* and *Cannon*, where officers had some indication that they may be arresting the wrong person, here "there is no proof that Mincey had doubts as to Rushing's identity when he completed the affidavit to obtain a warrant."

7

(R.1-48 at 14.) Just as we held in *Post* that "a 'mistaken but reasonable count' was sufficient for [ ] agents to establish arguable probable cause," *Kingsland*, 382 F.3d at 1233 (quoting *Post*, 7 F.3d at 1558), we believe that Mincey's arrest affidavit, although mistaken, was such that "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[s' knowledge] could have believed that probable cause existed to arrest." *Case*, 555 F.3d at 1327 (quotations and citations omitted). Mincey's conduct here is the type that qualified immunity is meant to protect: "a reasonable mistake in the legitimate performance of [an officer's] duties." *Kingsland*, 382 F.3d at 1233.

An analogy to the case at hand can also be drawn from *Post*. There, we held that the defendants had arguable probable cause to arrest the restaurant owner, despite the fact that the exonerating evidence was right before their eyes–officers simply had to correctly count the number of patrons at the restaurant. They could have counted more carefully, and conferred with management in order to find out which individuals were employees (and therefore should not have been counted). Nevertheless, we found that their mistake was reasonable even though the exonerating evidence was in front of them. Drawing from similar reasoning, while Mincey could have conducted a more thorough investigation by using the perpetrator's address and phone number from the roofing contract in order to confirm his identity, it was

8

reasonable for him to assume that the Plaintiff was the perpetrator. After the victim filed his complaint, Mincey took "appropriate steps to investigate the claim by interviewing [the victim] and [requesting] a fingerprint report regarding the prints on the back of the check produced by [the victim]." (R.1-48 at 14-15.) The victim admitted that he filed his complaint against Scott Rushing instead of J. Scott Rushing, and that he believed the name of the perpetrator was Scott Rushing. In addition, Mincey (1) obtained evidence that Scott Rushing d/b/a Roofing by Rushing was not a licenced contractor in Florida; (2) obtained arrest records for Scott Rushing; and (3) had the victim identify Rushing from a photo line-up. Mincey had no reason to believe that the Plaintiff was not indeed the perpetrator, especially in light of the fact that the victim filed the complaint against "Scott Rushing" and identified the Plaintiff as the perpetrator in the photo line-up. Throughout the investigation, the victim never expressed doubt that the Plaintiff was the perpetrator.

The fingerprint analysis appears to have provided proof that the Plaintiff was not the perpetrator. The analysis was complete on June 2, 2005–after Mincey completed the arrest affidavit. Although the individual who performed the analysis said the information was sent to Mincey "around June 2nd," the Plaintiff has produced no evidence which establishes the date on which Mincey received it. In fact, there is no evidence regarding whether Mincey actually received the analysis at

9

all; he went on medical leave on June 21, 2005 and "the Certification of Health Care Provider submitted by Mincey reflected that he was suffering from 'severe underlying lung disease requiring oxygen' (emphysema) that commenced on June 3, 2005." (R.1-48 at 17-18.)

Although by no means perfect, Mincey's investigation was not "plainly incompetent." *Kingsland*, 382 F.3d at 1231 (quotations and citation omitted). Nor did the Plaintiff produce evidence that Mincey "knowingly violated the law." *Id.* (quotations and citation omitted). There is no evidence that Mincey had reason to believe the perpetrator was anyone other than the Plaintiff, given the victim's complaint and identification. Most importantly, we believe that a reasonable officer in Mincey's situation could have followed a similar course of action and believed that probable cause existed. In order to "defeat summary judgment because of a dispute of material fact, a plaintiff facing qualified immunity must produce evidence that would allow a fact-finder to find that no reasonable person in the defendant's position could have thought the facts were such that they justified the defendant's acts." *Post*, 7 F.3d at 1557. The Plaintiff has not met his burden. Accordingly, we find that Mincey had, at minimum, arguable probable cause to issue the arrest affidavit of the Plaintiff.

III.

10

We also believe that Last acted reasonably given his limited involvement in the investigation. In January 2006, the state attorney's office contacted Last and "told him that the investigation had been completed, that there was already a charge based on the affidavit, and that all they needed was a photo-pack identification from the victim." (R.1-48 at 20.) It is true that the fingerprint analysis, which may have exonerated the plaintiff, was in the nineteen-page file when Last conducted the photo-pack identification. However, Last's failure to conduct a review of all evidence in the case was not unreasonable. Other reasonable officers could have followed the same course of action as Last. *See Case*, 555 F.3d at 1327. We agree with the district court that the Plaintiff has not shown a reason for Last to have questioned the thoroughness of the previous investigation. (R.1-48 at 21.) Nor has the Plaintiff shown any reason for Last "to believe that [the victim's] identification of Plaintiff was unreliable." *Id.* If we were to determine that the district court erred by granting summary judgment for Last, an unwanted and inefficient precedent would be created, requiring officers, no matter how minimal their involvement in the case, to second guess the previous work of officers, and to conduct overlapping and inefficient investigations. Accordingly, this court agrees with the district court that, given Last's limited involvement in the case, he acted as a reasonable officer would in securing the identification of the Plaintiff by the victim, despite his failure to review the

11

Plaintiff's file that was assembled by Mincey.  The trial court correctly granted the Defendants' summary judgment motion.

AFFIRMED.