[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 16, 2010
JOHN LEY
CLERK

No. 09-15073
Non-Argument Calendar
_____

D. C. Docket No. 05-00137-CV-5-RS-MD

MICHAEL EDWARD PAIR,

Plaintiff-Appellant,

versus

CITY OF PARKER FL POLICE DEPARTMENT, et al.,

Defendants,

AARON WILSON,
Officer,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 16, 2010)

Before BLACK, HULL and PRYOR, Circuit Judges.

PER CURIAM:

Michael Edward Pair pro se appeals the grant of summary judgment in favor of Defendant Aaron Wilson on Pair's 42 U.S.C. § 1983 claim that Wilson violated his constitutional rights when he arrested Pair.  After review, we affirm.

## I.  BACKGROUND

### A.    June 3, 2002 Traffic Stop and Van Search

In the early morning of June 3, 2002, Officer Wilson of the City of Parker, Florida Police Department saw a man, later identified as Pair, loading a box into a white van from the front door of a closed bar.  Concerned about a possible theft, Officer Wilson conducted a traffic stop of the van, observed an open container of alcohol on the van's center console, and asked Pair to get out of the van.  Pair said he was in a band and that the box contained some of his equipment, but denied Officer Wilson's request to search the van.  Officer Wilson called for a K-9 unit and began writing Pair a citation for the open container.

The bar's owner arrived and told Officer Wilson that Pair was "with her."  Wilson ordered the woman away from the scene for safety reasons and continued writing the citation.  A few minutes later, as Officer Wilson completed the citation, the K-9 unit arrived.  The dog walked around the outside of the van and alerted for narcotics.  A subsequent search of the van revealed some baggies, empty ephedrine

2

bottles, an electronic scale and a bottle of butane, all of which Officer Wilson seized and sent for testing at the Florida Department of Law Enforcement ("FDLE") crime lab. Pair was issued an open container citation and allowed to leave.

**B. October 1, 2002 Arrest and House Search**

On September 23, 2002, an FDLE chemist completed a report finding methamphetamine residue on the baggies and the scale. As part of his follow-up investigation, on October 1, 2002, Officer Wilson contacted Gregg Dearth, a deputy sheriff with the Bay County Sheriff's Office ("BCSO"), for assistance in visiting Pair at his residence, which was outside the City of Parker and Officer Wilson's jurisdiction.

The same day, the two officers went to Pair's residence. While Officer Wilson went to the front door, Deputy Dearth moved toward an unoccupied white van parked near the residence. The van's side door was open, and Deputy Dearth could see a Coleman fuel tank inside. In the area surrounding the residence, Deputy Dearth saw what, in his experience, was the remnants of a methamphetamine lab. When there was no response to Officer Wilson's knock, the officers left.

A few hours later, Officer Wilson applied for and received a warrant for

3

Pair's arrest for possession of methamphetamine. Officer Wilson and Deputy Dearth then returned to Pair's residence. This time, Pair's girlfriend, Rhonda Couch, answered the door. The officers found Pair sleeping in a back bedroom and arrested him. While arresting Pair, the officers saw a baggie containing marijuana on a dresser.

After Pair was placed in a patrol car, Deputy Dearth called Investigator Robert Duncan of the BCSO and advised him that there appeared to be the remains of a methamphetamine lab on Pair's property, including propane tanks, waste cans of acetone, toluene and a Coleman fuel tank. Investigator Duncan told Deputy Dearth to secure the scene, which Deputy Dearth did.

When Investigator Duncan and BCSO Investigator Richard Bagwell arrived at the scene, Couch denied their request to search the residence. Investigator Duncan obtained a search warrant, and he and Investigator Bagwell searched Pair's residence, finding a dormant methamphetamine lab and materials to create a pipe bomb. Investigator Bagwell dismantled the methamphetamine lab, and the federal Bureau of Alcohol, Tobacco and Firearms took custody of the bomb materials.

Both Couch and Pair were arrested for marijuana possession. Pair was later charged in federal court with manufacturing methamphetamine. The district court in Pair's federal criminal prosecution suppressed the evidence found in Pair's van

4

and residence on grounds that Officer Wilson's continued detention of Pair on June 3, 2002 to await the K-9 unit was unconstitutional. The government subsequently dismissed Pair's federal indictment.

## C.    District Court Proceedings

Pair filed this pro se § 1983 action, alleging that Officer Wilson, Deputy Dearth and Investigators Duncan and Bagwell violated his Fourth and Fourteenth Amendment rights by conducting illegal searches and seizures on June 3, 2002 and October 1, 2002. The defendants filed special reports arguing that they were entitled to qualified immunity. The district court gave Pair notice that it would treat the defendants' special reports as motions for summary judgment.

Pair filed a response and other documents, including, inter alia: (1) Officer Wilson's deposition in which he described his June 3, 2002 traffic stop and search of Pair's van; (2) a September 2000 disciplinary report from the BCSO terminating Wilson's employment as an investigator because he provided false information to a judge when applying for a search warrant; and (3) Pair's affidavit that largely consisted of conclusory allegations about the illegality of the defendants' actions on October 1, 2002 and an accusation that Officer Wilson forged Pair's arrest warrant.

The magistrate judge's Report ("R&R") recommended granting summary

judgment to all the defendants with respect to claims arising out of the search at Pair's residence and arrest on October 1, 2002 based on qualified immunity. However, as to the claims against Officer Wilson stemming from the traffic stop on June 3, 2002, the R&R recommended that summary judgment be denied. Over Pair's objections, the district court adopted the R&R and granted summary judgment to all defendants as to the October 1, 2002 search and arrest, but denied summary judgment to Officer Wilson as to the June 3, 2002 traffic stop and search.

Following a bench trial, the district court ruled that Officer Wilson violated Pair's constitutional rights on June 3, 2002 by stopping him without reasonable suspicion and by detaining him without proper justification until the K-9 unit arrived. The district court awarded Pair nominal damages of $100.00. Pair filed this appeal.

## II. DISCUSSION

Pair argues the district court erred in granting summary judgment to Officer Wilson on Pair's false arrest claim (the October 1, 2002 arrest at his residence) on qualified immunity grounds.[1]

---

[1]Pair does not appeal the grant of summary judgment to Defendants Dearth, Duncan and Bagwell. Neither Pair nor Wilson appeals the district court's rulings relating to the bench trial against Defendant Wilson arising from the June 3, 2002 traffic stop and search. Thus, the only issue before us is whether the district court properly granted summary judgment to Defendant Wilson with regard to Pair's October 1, 2002 arrest. We review a district court's grant of summary judgment de novo, viewing the facts in the light most favorable to the non-moving party. Skop v. City of Atlanta, 485 F.3d 1130, 1136 (11th Cir. 2007).

"[Q]ualified immunity offers complete protection to government officials sued in their individual capacities as long as their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known."  Oliver v. Fiorino, 586 F.3d 898, 904 (11th Cir. 2009) (quotation marks omitted).  Qualified immunity protects officers acting within the scope of their discretionary authority at the time of the allegedly wrongful act.  McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009).  If the officer was acting within the scope of his discretionary authority, the burden shifts to the plaintiff to show that a reasonable officer would have known that he was violating the plaintiff's constitutional or statutory rights.  Id.

Pair contends that Officer Wilson was not entitled to qualified immunity because: (1) he was acting outside the scope of his discretionary authority when he obtained and executed the October 1, 2002 arrest warrant; and (2) a reasonable officer would not have relied on that arrest warrant because it was facially invalid.[2]

1.    Scope of Discretionary Authority

In evaluating whether an official was acting within the scope of his discretionary authority, we consider whether the official was "(a) performing a

_____

[2]For the first time on appeal, Pair argues that the October 1, 2002 arrest warrant and search of his residence were tainted by Officer Wilson's unconstitutional traffic stop on June 3, 2002.  Because Pair did not raise this particular argument in the district court, we decline to consider it.  See Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004).

7

legitimate job-related function" that was "(b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). As to the first prong, "we do not ask whether [a police officer] has the right to engage in unconstitutional searches and seizures, but whether engaging in searches and seizures in general is part of his job-related powers and responsibilities." Id. at 1266. If so, then, as to the second prong, we ask whether the police officer "is executing that job-related function . . . in an authorized manner." Id.

In general, making arrests was part of Officer Wilson's job-related duties as a law enforcement officer. Furthermore, contrary to Pair's claims, Florida law does not prohibit a city law enforcement officer, such as Officer Wilson, from obtaining an arrest warrant from a judge. Although Florida law requires a county sheriff to execute the arrest warrant, see Fla. Stat. § 901.04, Officer Wilson obtained the cooperation of Deputy Dearth of the BCSO to arrest Pair. Thus, we find no merit to Pair's claim that Officer Wilson's arrest of Pair was performed in an unauthorized manner. Accordingly, we conclude that Officer Wilson was acting within the scope of his discretionary authority when he obtained the October 1, 2002 arrest warrant and when he arrested Pair with Deputy Dearth's assistance.

2.    Arguable Probable Cause

8

An arrest without probable cause violates the Fourth Amendment. See

Durruthy v. Pastor, 351 F.3d 1080, 1088 (11th Cir. 2003). Likewise, knowingly or

recklessly making false statements about probable cause in an affidavit supporting

an arrest warrant is unconstitutional. See Malley v. Briggs, 475 U.S. 335, 343-45,

106 S. Ct. 1092, 1097-98 (1986); Kelly v. Curtis, 21 F.3d 1544, 1553-54 (11th Cir.

1994). "The existence of probable cause at the time of arrest constitutes an

absolute bar to a section 1983 action for false arrest." Rushing v. Parker, 599 F.3d

1263, 1265 (11th Cir. 2010) (quotation marks omitted).

An officer who makes an arrest without actual probable cause is nonetheless

entitled to qualified immunity if there was "arguable probable cause" for the arrest.

Durruthy, 351 F.3d at 1089. "Arguable probable cause exists where reasonable

officers in the same circumstances and possessing the same knowledge as the

Defendant could have believed that probable cause existed to arrest." Rushing,

599 F.3d at 1266 (quotation marks omitted). Similarly, when the arrest is pursuant

to a warrant, the officer "will not be immune if, on an objective basis, it is obvious

that no reasonably competent officer would have concluded that a warrant should

issue; but if officers of reasonable competence could disagree on this issue,

immunity should be recognized." Malley, 475 U.S. at 341, 106 S. Ct. at 1096.

"Only where the warrant application is so lacking in indicia of probable cause as to

9

render official belief in its existence unreasonable will the shield of immunity be lost." Id. at 344-45, 106 S. Ct. at 1098 (citation omitted); see also Garmon v. Lumpkin County, 878 F.2d 1406, 1410 (11th Cir. 1989) (explaining that "the question is whether a reasonably well-trained officer in appellee's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant" (quotation marks and brackets omitted)).

Pair argues that no reasonable officer could have believed there was probable cause to arrest him because of discrepancies in the October 1, 2002 arrest warrant. Specifically, the arrest warrant was originally dated October 3, 2002, but was corrected with an initialed change to October 1, 2002. Additionally, the warrant states that the State of Florida "made oath" that Pair possessed methamphetamine on October 3, 2002. Officer Wilson contends that this was a typographical error and that the month should have been June, rather than October, to reflect the date of his traffic stop. According to Pair, because the warrant seemingly was issued before the crime was allegedly committed, it is obvious from the face of the warrant that no officer swore an oath.[3]

_____

[3]Pair also points to a handwritten notation on the front of the arrest warrant that states "Iss: 10-2-02." Pair produced no evidence as to when this notation was placed on the warrant and what it actually means. Without more, even construing the evidence in favor of Pair, this notation does not support a finding that the arrest warrant was issued on October 2, 2002, one day after his arrest, as Pair maintains.

10

Even with the date discrepancy Pair highlights, a reasonably competent officer, in Officer's Wilson's shoes, in light of the information Officer Wilson possessed, could conclude that probable cause existed and that the arrest warrant should issue. Officer Wilson personally conducted the June 3, 2002 traffic stop and van search, obtained the FDLE lab report indicating that methamphetamine residue had been found on items seized from Pair's van and, on October 1, 2002, observed with Deputy Dearth what appeared to be the remains of a methamphetamine lab outside Pair's residence. Pair has presented no evidence that any of Officer's Wilson's information was false, i.e., that the baggies and scale seized from Pair's van did not have methamphetamine residue on them or that the remains of a methamphetamine lab were not observed in the yard around Pair's residence.

Further, Officer Wilson personally sought the arrest warrant, swore to Pair's possession of methamphetamine and then executed the arrest warrant with Deputy Dearth's assistance. In other words, this is not a case in which the officer executing the arrest warrant is relying on the face of the warrant or allegations in the warrant application of which he has no personal knowledge. A reasonable officer, knowing what Officer Wilson knew when the arrest warrant was issued, would not have questioned whether probable cause to arrest Pair for

11

methamphetamine possession existed merely because of the date discrepancy on the warrant.

For all these reasons, the district court properly granted summary judgment to Defendant Wilson on Pair's false arrest claim arising from his October 1, 2002 arrest.

**AFFIRMED.**