[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-12473
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-00025-WS-N


TINA DIANE WINDHAM,

Plaintiff - Appellant,

versus

CITY OF FAIRHOPE,
TRENT SCOTT,
DAMIAN REHORN,

Defendants - Appellees,

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(January 29, 2015)

Before HULL, JILL PRYOR, and BLACK, Circuit Judges.

PER CURIAM:

Tina Windham appeals the district court's order granting summary judgment in favor of the City of Fairhope, Alabama ("the City"), and two of its police officers, Trent Scott and Damien Rehorn, on her claims under 42 U.S.C. § 1983, alleging false arrest, excessive force, and municipal liability, and related state law claims. After careful review of the record and the parties' briefs, we affirm.

I.

On the morning of January 12, 2012, a Fairhope Police Department dispatcher contacted patrolling officers Scott and Rehorn, stating, "Could you go to 853 North Section, 8-5-3 North Section? Tina Windham is outside hollering about her neighbors again." Indeed, Ms. Windham admits that she and her neighbors have had a longstanding contentious relationship, resulting in the filing and counter-filing of criminal charges and complaints against one another. What happened next is largely undisputed because officers Scott and Rehorn activated a camera on the dashboard of their police vehicle and a body microphone worn by one of the officers that recorded audio. Neither side disputes the authenticity of these recordings.[1]

When the officers arrived at the scene, Ms. Windham was standing in the road in front of her yard holding a gas can, speaking to a man standing next to a

---

[1] In any event, we construe in Ms. Windham's favor any facts genuinely in dispute. *See McCullough v. Antolini*, 559 F.3d 1201, 1202 (11th Cir. 2009) (requiring courts to rely on all undisputed facts and otherwise take facts in the light most favorable to the nonmovant at the summary judgment phase).

white truck.  Ms. Windham, the man, and the truck's driver's side wheels were situated in the southbound lane of a two lane road, with the truck's passenger side wheels in Ms. Windham's front yard.  The officers, with their vehicle's police lights illuminated, parked behind the truck and farther into the road to ensure their safety and the safety of the two individuals they approached.  Moderate traffic congested the road, and the dashboard camera video shows that cars approaching Ms. Windham, the truck, and, after it had parked, the police car, had to slow down to navigate past.

As the officers parked, the man got into the truck's driver's seat.  Ms. Windham remained in the street next to the truck, and Officer Scott called out, "Hey Ms. Windham, how you doin'?"  Ms. Windham looked at Officer Scott and then looked at the truck's driver, saying, "Don't go anywhere.  You're going to be a witness.  Don't go anywhere, I just gave you gas."  Both officers approached, and Officer Scott calmly asked Ms. Windham to step out of the roadway.  Ms. Windham loudly responded, "No."  When the officers told her she was in the road (and clearly she was), Ms. Windham yelled back, "You're in the road, I'm not in the road."  The truck's driver can be heard responding, "I'll get out of the road," and he did, moving his truck to Ms. Windham's driveway.

As the truck moved out of the road, Ms. Windham began yelling louder, "I've had it, and I really don't even want to talk to you," all the while waving her

3

finger at Officer Scott.  When Officer Scott responded by asking Ms. Windham to calm down, Ms. Windham yelled, "You calm down!"  Ms. Windham told the officers loudly that the truck's driver had run out of gas and she had just given him some.  Because Ms. Windham was still in the road at this time, Officer Scott again asked her to step out of the road.  Again, she retorted, "You get out of the road!"  Officer Scott repeated his request that Ms. Windham calm down, but she continued to yell at him while standing in the road.

Next, Officer Scott reached for the gas can, but Ms. Windham jerked it away.  Officer Scott said, "Hand me that gas can."  Ms. Windham again refused and walked away from Officer Scott onto the shoulder of the road.  She yelled to the truck's driver, now parked in her driveway, "You see what I'm talking about!  I gave this man some gas!"  Officer Scott said to her, "You just need to calm down. We don't need all this hollering."  Ms. Windham responded, "I'm not calming down.  I don't have to.  I'm in my fucking yard."  Officer Scott responded, "Yes ma'am, but you're also in the roadway."[2]  He again asked Ms. Windham to calm down, but she remained highly agitated.  Ms. Windham asked the officers why they were there and who called about her.  When Officer Scott said, "I don't know" and repeated his request for her to calm down, Ms. Windham began screaming, "I don't have to calm down!  I'm not calming down."  Officer Scott

---

[2] In fact, Ms. Windham was no longer standing in the road when Officer Scott made this statement.  She was standing on the road's shoulder, which of course is right at the road's edge.

replied, "Yes ma'am, you are going to calm down." He took the gas can from her, and she shouted, "Give me my gas back!" Officer Scott then told Ms. Windham she was under arrest.[3]

Ms. Windham was charged with several criminal offenses, including one count of disorderly conduct in violation of Alabama Code § 13A-11-7. Ms. Windham thereafter sued the City and officers Scott and Rehorn under § 1983 and state law, asserting the officers lacked even arguable probable cause to arrest her. The City and the officers moved for summary judgment, and Ms. Windham filed a cross motion for partial summary judgment. The district court denied Ms. Windham's motion and granted the defendants' motion, concluding (as relevant here) that they were entitled to qualified immunity on Ms. Windham's claims under § 1983 and immunity for her state law false arrest claims. This is Ms. Windham's appeal.

II.

We review *de novo* summary judgment rulings, including those based on qualified immunity, drawing all inferences and reviewing all evidence in the light most favorable to the non-moving party. *See Wilkerson v. Seymour*, 736 F.3d 974,

---

[3] Ms. Windham admits she "vigorously resist[ed]" arrest, and her obstreperous behavior did not end after the officers handcuffed her. She nevertheless originally asserted claims against the officers and the City for excessive use of force under § 1983 and state law (as well as state law claims for assault and battery) based on the tussle that ensued during and after her arrest, but she makes no such argument on appeal. Accordingly, she has abandoned these claims, and we need not address them. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004).

977 (11th Cir. 2013); *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).

Summary judgment should be granted when the record evidence shows there is no

genuine dispute concerning any material fact and the movant is entitled to

judgment as a matter of law. *Feliciano v. City of Miami Beach*, 707 F.3d 1244,

1247 (11th Cir. 2013) (citing Fed. R. Civ. P. 56(a)). Conclusory allegations and

speculation are insufficient to create a genuine issue of material fact. *See Cordoba

v. Dillard's Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not

create a *genuine* issue of fact; instead, it creates a false issue, the demolition of

which is a primary goal of summary judgment." (internal quotation marks

omitted)).

### III.

We first address Ms. Windham's contention that the district court erred in

concluding officers Scott and Rehorn were entitled to qualified immunity on her §

1983 claim that the officers arrested her without probable cause in violation of her

Fourth Amendment rights. "Under the doctrine of qualified immunity, government

officials acting within their discretionary authority are immune from suit unless the

official's conduct violates clearly established federal statutory or constitutional

rights of which a reasonable person would have known." [4] *Keating v. City of

Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (alteration and internal quotation marks

---

[4] There is no dispute that officers Scott and Rehorn were acting within their discretionary authority on the morning of January 12, 2012.

6

omitted).  "To avoid summary judgment on qualified immunity grounds, the plaintiff's allegations, supported by admissible evidence, must demonstrate both (1) a constitutional violation and (2) that the violation was clearly established." *Wilkerson*, 736 F.3d at 977.  To determine whether a right was clearly established, we look to binding decisions of the Supreme Court of the United States, this Court, and the highest court of the relevant state.  *McClish v. Nugent*, 483 F.3d 1231, 1237 (11th Cir. 2007).

An arrest made without probable cause is a violation of an arrestee's clearly established Fourth Amendment rights.  *See Redd v. City of Enter.*, 140 F.3d 1378, 1382 (11th Cir. 1998).  Probable cause exists when "facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002) (internal quotation marks omitted).  In the context of § 1983, however, a police officer may be entitled to qualified immunity even if there was no actual probable cause for an arrest, so long as there was *arguable* probable cause.  *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003).  "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant

could have believed that probable cause existed to arrest." *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010) (internal quotation marks omitted).

We conclude that officers Scott and Rehorn had arguable probable cause, and indeed had actual probable cause, to arrest Ms. Windham for disorderly conduct. "A person commits the crime of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he or she," among other things, either "[m]akes unreasonable noise" or "[o]bstructs vehicular or pedestrian traffic . . . ." Ala. Code § 13A-11-7(a)(2), (5). Ms. Windham was at least arguably committing both of these forms of disorderly conduct during her interaction with the officers. When the officers arrived, Ms. Windham was standing in the path of traffic on a busy two-lane road. She then refused Officer Scott's repeated requests that she move out of the roadway. True, Ms. Windham eventually stepped to the side of the road, but by that point the officers already reasonably understood that Ms. Windham had violated the disorderly conduct statute by obstructing vehicular traffic. Put differently, they had actual probable cause to arrest her for disorderly conduct. *See Lee*, 284 F.3d at 1195. Further, because Ms. Windham repeatedly yelled at the officers and to the truck's driver on a busy road, even if ultimately that noise was insufficient to sustain a conviction under the statute, reasonable officers could have determined there was probable cause to arrest Ms. Windham for violating the statute by

8

making unreasonable noise.  The officers therefore had at least arguable probable cause to make an arrest.[5]  *See Rushing*, 599 F.3d at 1266.

Because the officers presented evidence showing the existence of probable cause, the burden then shifted to Ms. Windham to "point to other portions of the record that would show that there was indeed a genuine issue of fact regarding the [probable cause] issue."  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 607-08 (11th Cir. 1991).  Although Ms. Windham argues that there are disputed issues of material fact about whether she was blocking traffic and whether her demeanor was loud or aggressive enough to create at least arguable probable cause for an arrest,[6] the video recording of the events leading up to Ms. Windham's arrest plainly belies this assertion.

Ms. Windham also contends that a genuine issue of material fact remains regarding whether her disorderly conduct was intentional, as the statute requires. Citing *Smith v. City of Anniston*, she argues that "questions of intent are generally matters for the finders of fact."  668 So. 2d 96, 98 (Ala. Crim. App. 1995).  In this

---

[5] This case is unlike *Wilkerson*, because the statutory violation for which the officers claimed qualified immunity in that case contained an extra element for which they had no evidence at all:  that the loud, unruly actions be "for the purpose of insulting, degrading, or inciting another or a group of individuals in a public place."  736 F.3d at 978 (citing Code of Dekalb County, Georgia, § 16-58).  As we have explained above, Officers Scott and Rehorn had ample evidence that Ms. Windham's conduct met each element of Alabama's disorderly conduct statute.

[6] Ms. Windham also emphasizes the officers' testimony related to the gas can, asserting that her carrying and using it to assist the truck's driver cannot be a crime.  Even so, Ms. Windham's other conduct *did* amount to a violation of Alabama's disorderly conduct statute, thus it is immaterial that she may have been engaging in contemporaneous lawful activity.

9

case, however, the video from the officers' dashboard camera established that Ms. Windham knew she was in the road, heard Officer Scott's entreaties to her to step out of the road, and explicitly refused to move from her position. The video also shows beyond dispute that Ms. Windham was combative from the start of her interactions with officers Scott and Rehorn and that the volume of her protestations steadily increased throughout their exchange, despite Officer Scott's repeated exhortations to calm down. The video provides definitive evidence that Ms. Windham intentionally or at least recklessly (as the statute also allows) blocked vehicular traffic and expressed her discontent unreasonably loudly in violation of the Alabama statute. We agree with the district court that Ms. Windham has not put forth sufficient evidence to create a genuine issue of material fact in this case.[7]

Thus, the district court correctly concluded that officers Scott and Rehorn were entitled to qualified immunity and summary judgment on Ms. Windham's claims alleging that the officers violated her Fourth Amendment rights by executing an unlawful arrest. Further, because we conclude the officers had actual probable cause to arrest Ms. Windham for disorderly conduct in obstructing vehicular traffic, there is no constitutional violation for which the City could be

---

[7] Ms. Windham's assertion that the district court's order denying the defendants' motion to dismiss is somehow indicative of how it should rule on cross motions for summary judgment is meritless. *See Vintilla v. United States*, 931 F.2d 1444, 1447 (11th Cir. 1991) (emphasizing that the district court's denial of an initial motion to dismiss does not restrict the court's ability to reconsider its ruling at the summary judgment stage).

10

held responsible. *See McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) ("[T]o impose § 1983 liability on a municipality, a plaintiff must show . . . that his constitutional rights were violated . . . ."). For this same reason, the district court also was correct to conclude that the City and the officers were entitled to immunity for Ms. Windham's state law claim for false arrest.[8] *See* Ala. Code § 6-5-338(a) (providing immunity for peace officers performing discretionary functions); *id.* § 6-5-338(b) (providing immunity for municipalities authorized to appoint peace officers); *Wood v. Kesler*, 323 F.3d 872, 883 (11th Cir. 2003) (emphasizing that law enforcement officers are immune under § 6-5-338(a) unless a plaintiff shows the defendants "acted in bad faith, with malice or willfulness" (internal quotation marks omitted)); *Ex parte Dixon*, 55 So. 3d 1171, 1179 (Ala. 2010) ("It is well established that, if a municipal peace officer is immune pursuant to § 6-5-338(a), then pursuant to § 6-5-338(b), the city by which he is employed is also immune." (internal quotation marks omitted)).[9]

---

[8] We have jurisdiction over these state law claims because they are "inextricably interwoven with" the issues — the existence of arguable and actual probable cause — that are properly before this Court on Ms. Windham's appeal from the district court's order granting summary judgment in favor of the defendants on her § 1983 claims. *See Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 594 (11th Cir. 1997) (internal quotation marks omitted).

[9] We need not address Ms. Windham's claim that the Alabama disorderly conduct statute is unconstitutional. Even if the statute was in some way constitutionally invalid, Officers Scott and Rehorn had probable cause to believe that it was violated, thus making Ms. Windham's arrest lawful. *See Michigan v. DeFillippo*, 443 U.S. 31, 37-38 (1979) (declining to invalidate arrest and search because probable cause existed and law enforcement officer had no reason to know, under controlling precedent, that the ordinance supporting the arrest later would be declared unconstitutional); *Lee*, 284 F.3d at 1196 n.4 (assuming for argument an ordinance is

11

IV.

For the reasons set forth above, we affirm the district court's grant of summary judgment in favor of the City and officers Scott and Rehorn, as well as its denial of Ms. Windham's cross motion.

**AFFIRMED.**

---

unconstitutional and still finding the officer entitled to qualified immunity because the officer had probable cause that the ordinance was violated).