[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-13814
Non-Argument Calendar
_____

D.C. Docket No. 2:17-cv-00044-ECM-SMD

AMBER JERNIGAN,
TAYLOR JERNIGAN,

Plaintiffs-Appellants,

versus

CITY OF MONTGOMERY, ALABAMA,
OFFICER JEREMY BROWNING,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama
_____

(April 10, 2020)

Before WILSON, WILLIAM PRYOR and LUCK, Circuit Judges.

PER CURIAM:

Amber and Taylor Jernigan appeal the summary judgment in favor of the City of Montgomery, Alabama, and its employee, Officer Jeremy Browning. 42 U.S.C. § 1983. Officer Browning arrested the Jernigans after misinterpreting a computer database as listing outstanding warrants for their arrest instead of criminal summonses. The Jernigans complained that Officer Browning falsely arrested them in violation of the Fourth Amendment and that the City was deliberately indifferent for failing to train its officers how to interpret its mobile computer database. The Jernigans also complained of false imprisonment by Officer Browning and of violations of state laws by the City and its officer, but the Jernigans have abandoned any challenge they could have made to the summary judgment against their claim of false imprisonment and to the refusal of the district court to exercise its supplemental jurisdiction over their claims under state law. *See Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1318–19 (11th Cir. 2012). The district court ruled that Officer Browning was entitled to qualified immunity for his reasonable mistake of fact and that City did not act with deliberate indifference because it was not obvious that the failure to provide additional training on the mobile computer database would result in improper arrests. We affirm.

## I. BACKGROUND

While in his patrol car, Officer Browning searched his computer for outstanding arrest warrants. When trained on the mobile device, a field officer told Officer Browning that the database catalogued warrants "for misdemeanors and felonies." In fact, the database catalogued warrants and criminal summons, and the summonses were distinguishable by their case numbers, which contained the letter "s."

Officer Browning mistakenly determined that the Jernigans had charges pending for harassment, drove to their home, and arrested them. Officer Browning detained the Jernigans in the back seat of his patrol car while dispatch verified their arrest warrants. Approximately 40 minutes later, dispatch reported that the Jernigans had summonses, not arrest warrants. Officer Browning immediately released the Jernigans and apologized for his mistake.

During discovery, Officer Browning testified that he was not told during training on his mobile computer that criminal summons were catalogued with warrants. He stated that the Jernigans' case numbers included the letter "s" and that he would not have arrested the couple had he been told during his training that the "s" reflected an outstanding summons. Officer Browning could not recall whether he received training concerning criminal summonses.

The Jernigans deposed J.E. King, a former police officer, about processing and serving printed summonses and warrants. Mr. King stated that "[a]n affidavit summons is usually—from my understanding it's where there is a complaint, but it doesn't rise to the level of violation of a federal, state or local law." When he "worked the police desk," he served criminal summonses and "never kn[ew] for an affidavit summons to be sent by mail." Mr. King also stated that, after "a summons or a warrant is issued, the magistrate's office usually transfers those to the police department within a day or that day," where they were "house[d] . . . in [the] records section [of the police department] until they are ready to be served." Officers executed arrest warrants, according to Mr. King, when there is "some reason or . . . an instance where a police officer comes in contact with that person and has a reason to believe that they need to run a check on them to determine whether or not there is a warrant." But on further questioning, he stated "[t]here [was] no set standard" for executing outstanding warrants and "no policy" that prohibited police officers from arresting suspects on outstanding warrants.

Officer Browning and the City jointly moved for summary judgment, which the district court granted. The district court found that Officer Browning had arguable probable cause to arrest the Jernigans based on "the unrefuted evidence in the record . . . that Browning . . . [had a] mistaken understanding that the listing on his computer was of warrants for arrest." The district court ruled that Officer

4

Browning was entitled to summary judgment because no clearly established law declared "unlawful an arrest where an officer mistakenly thinks a warrant has been issued for a person's arrest based on the understanding of the information he reviewed, but instead only a summons has issued." The district court also ruled that the City was entitled to summary judgment "because there [was] no evidence . . . [it had received] notice of prior constitutional violations" caused by the mobile computers and "the facts of the case f[e]ll outside of the narrow range of circumstances where the need for training [was] 'so obvious' that a failure to adequately train . . . [amounted to] deliberate indifference."

## II. STANDARD OF REVIEW

We review *de novo* a summary judgment. *Carter v. Butts Cty., Ga.*, 821 F.3d 1310, 1318 (11th Cir. 2016). We view the evidence and draw all factual inferences in favor of the non-moving party. *Id.* Summary judgment is appropriate where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(a).

## III. DISCUSSION

The Jernigans challenge the summary judgment in favor of Officer Browning and the City. They argue that Officer Browning lacked arguable probable cause to arrest them. They also argue that the City acted with deliberate indifference by failing to train Officer Browning how to interpret the mobile computer database.

*A. Officer Browning Had Arguable Probable Cause to Arrest the Jernigans.*

Officer Browning enjoys qualified immunity for his discretionary acts so long as his "conduct [did not] violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dalrymple v. Reno*, 334 F.3d 991, 994 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)). Because the Jernigans do not dispute that Officer Browning was acting within his discretionary authority when he arrested them, they must "show that qualified immunity is not appropriate." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (internal quotation marks omitted). So Officer Browning enjoys immunity from suit if his "error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted).

The Fourth Amendment protects citizens against an arrest without probable cause. *Carter*, 821 F.3d at 1319. For probable cause to exist, law enforcement officers must have facts sufficient to warrant a reasonable belief that the suspect has or is committing a crime. *Id.* Qualified immunity protects an officer so long as he has arguable probable cause to arrest. *Grider v. City of Auburn*, 618 F.3d 1240,

6

1257 (11th Cir. 2010); *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir.1997). The standard of arguable probable cause is an objective one, and "does not include an inquiry into the officers' subjective intent or beliefs." *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010) (quoting *Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990)). "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest." *Id.* (quoting *Case v. Eslinger*, 555 F.3d 1317, 1327 (11th Cir. 2009)).

Our precedents hold that arguable probable cause exists when an officer makes a "reasonable mistake in the legitimate performance of [his] duties." *Washington v. Rivera*, 939 F.3d 1239, 1249 (11th Cir. 2019); *Post v. City of Ft. Lauderdale*, 7 F.3d 1552, 1558 (11th Cir. 1993). In *Post*, we concluded that a police officer had arguable probable cause to arrest a restaurant owner for violating building code regulations based on the officer's miscount of the number of customers in the restaurant. *Id.* Based on *Post*, we concluded in *Washington* that a probation officer had arguable probable cause to issue a warrant to arrest the plaintiff for failing to pay a fine based on mistaken information provided by the clerk's office that the fine remained unpaid. 939 F.3d at 1241–42, 1249.

Like the officers in *Post* and *Washington*, Officer Browning was entitled to qualified immunity. Because Officer Browning "reasonably but mistakenly

7

conclude[d] that probable cause [was] present[, he] [is] entitled to immunity." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (internal quotation marks omitted). The Jernigans argue that any reasonable officer "presented with a summons instead of a warrant . . . would plausibly believe they were in possession of a valid warrant," but Officer Browning did not arrest the Jernigans using a document. Officer Browning accessed the Jernigans' case information on his mobile computer and mistakenly determined there was a warrant for their arrest. Because Officer Browning made a good faith mistake of fact in arresting the Jernigans, he is immune from suit.

### B. The City Did Not Act With Deliberate Indifference.

The Supreme Court has explained "that there are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387 (1989). "To satisfy the statute, a municipality's failure to train its employees in a relevant respect must amount to deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). But a municipality is not liable unless the "failure to train reflects a deliberate or conscious choice." *Canton*, 489 U.S. at 389. "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs of Bryan Cty.,*

8

*Okl. v. Brown*, 520 U.S. 397, 410 (1997) (internal quotation marks omitted). The "plaintiff must present some evidence that the municipality knew of a need to train and/or supervise . . . [and] made a deliberate choice not to take any action." *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting *Brown*, 520 U.S. at 409).

The Jernigans argue that their unlawful arrest evidences deliberate indifference by the City. The Supreme Court has "left open the possibility that, in a narrow range of circumstances," a municipality may be held liable when a single incident is the "obvious" consequence of a failure to provide specific training. *Id.* To prevail, a plaintiff must prove that the violation of his or her federal rights was "a highly predictable consequence" of failing to train its officers. *Brown*, 520 U.S. at 409. The plaintiff must prove a correlation between "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Id.*

The Jernigans liken their situation to *Brown v. Bryan County*, 219 F.3d 450 (5th Cir. 2000), in which a jury found that a municipality acted with deliberate indifference in failing to train a 21-year-old reserve sheriff's deputy on the proper use of a "takedown" arrest. *Id.* at 452–53. The deputy had only "been on the force

9

for a matter of weeks," had no prior experience as a law enforcement officer, had a criminal record and an outstanding warrant for his arrest, and had been accused of misconduct during his brief time on the force. *Id.* at 454–55. The Fifth Circuit concluded that the jury "reasonably could have concluded that the County's decision not to train [the deputy], compounded by its policy of not requiring proper supervision, was the 'moving force' behind the unconstitutional use of excessive force, which caused Brown's injury." *Id.* at 465.

The Jernigans failed to prove deliberate indifference on the part of the City. This case is distinguishable from *Brown* because the City trained Officer Browning. Officer Browning testified that he was trained how to use his mobile computer, but that his trainer failed to instruct him how to differentiate between arrest warrants and criminal summonses. The Jernigans do not argue, much less explain, how the City could have predicted that Officer Browning would misunderstand the database and mistakenly arrest citizens named in criminal summonses. The couple faults the City for failing to train how to "properly serv[e] summons," but Officer Browning's knowledge of how to serve a summons would have made no difference because he did not know the Jernigans were named in summonses instead of in arrest warrants. Because the Jernigans failed to prove that the City was deliberately indifferent to their constitutional rights, the district court correctly entered summary judgment in favor of the City.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Officer Browning and the City of Montgomery.