[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-11011

_____

D.C. Docket No. 2:14-cv-01768-KOB


JEFFREY COZZI,

Plaintiff - Appellee,

versus

CITY OF BIRMINGHAM, et al.,

Defendants,

CEDRICK THOMAS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(June 19, 2018)

Before ROSENBAUM and JILL PRYOR, Circuit Judges, and BARTLE,* District
Judge.

---

* Honorable Harvey Bartle III, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

JILL PRYOR, Circuit Judge:

Jeffrey Cozzi was arrested for the robbery of one pharmacy and the attempted robbery of another.  He was released after the police found no evidence linking him to the crimes.  Cozzi sued Officer Cedrick Thomas, the City of Birmingham, Alabama, and several other law enforcement officers alleging, among other claims, a violation of his Fourth Amendment right to be free from what he contends was an unlawful arrest.  The district court granted summary judgment in the defendants' favor on all charges except for Cozzi's unlawful arrest claim, brought under 42 U.S.C. § 1983, against Thomas.  On appeal, Thomas argues that he is entitled to qualified immunity on that claim because he had, at a minimum, arguable probable to arrest Cozzi.  After careful review, and with the benefit of oral argument, we affirm.

## I.    BACKGROUND[1]

On two consecutive days, a man demanding narcotics robbed a Walgreens pharmacy and attempted to rob a Rite Aid pharmacy.  In both instances, the perpetrator wore a partial face mask and handed the pharmacy technician a note that said he was a bomb specialist carrying explosives.  At the Walgreens, the man

---

[1] On review of a defendant's motion for summary judgment, we view the facts in the light most favorable to the plaintiff.  *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002).  In recounting the facts here, we will note where facts are disputed and at this stage resolve the disputes in Cozzi's favor.  We emphasize, however, "that the facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case."  *Priester v. City of Riviera Beach*, 208 F.3d 919, 925 n.3 (11th Cir. 2000) (internal quotation marks omitted).

acquired two pill bottles, containing a total of six pills, inside a plastic Walgreens bag.  The pills were alprazolam and buprenorphine.  At the Rite Aid, the man demanded Lortab and Xanax but left empty handed.

Thomas, a detective with the Birmingham Police Department, investigated the robbery, and another Birmingham Police detective investigated the attempted robbery.  Due to the similarities between the two incidents, the detectives believed the same person had committed both offenses.  Two witnesses from the Walgreens viewed a photo lineup and identified a man named James Hill as the perpetrator, but Thomas eliminated Hill as a suspect after being told that Hill was incarcerated at the time of the incidents.

While the officers continued their investigation, a surveillance video of the attempted robbery was shown on *Crime Stoppers*, a television program designed to elicit tips and information from the public about unsolved crimes in the local area. After the video aired, *Crime Stoppers* received an anonymous tip that Cozzi "resemble[d] the subject featured for the bomb threat."  Doc. 47-8 at 59.[2] According to the tipster, Cozzi had a tattoo that said "Lori" on his right hand and lived in Center Point, Alabama.  *Id.*

Meanwhile, a law enforcement officer with the Jefferson County Sheriff's Office received a similar tip from a confidential informant and sent it to Thomas.

---

[2] All citations in the form "Doc. #" refer to the numbered district court docket entries.

3

The informant stated that he recognized the person in the *Crime Stoppers* video as Cozzi based on a unique walking style; the hat and shoes the perpetrator wore; and the mask, which the informant said was similar to the kind Cozzi used for painting cars. The informant also provided Cozzi's address and said that Cozzi had a severe Lortab addiction and drove a purple pickup truck. After another officer drove by the given address and saw a purple truck parked outside, Thomas applied for and received a search warrant for Cozzi's home. When Thomas obtained the search warrant, the only evidence linking Cozzi to the crimes were the two tips, one anonymous and one from an informant unknown to Thomas, that Cozzi resembled the perpetrator in the crime scene surveillance video shown on television.

Thomas and two other detectives arrived at Cozzi's house to execute the warrant. They encountered him outside, detained him there, and kept him handcuffed while they searched the inside of his house and truck. The officers found no mask, no note, and no clothing that matched the perpetrator's. They recovered from the bedroom a plastic bag containing 32 loose pills that they found in a night stand and two locked safes.[3]

---

[3] The district court concluded there was a dispute of fact about whether the bag with 32 loose pills was found before or after Cozzi's arrest based on Cozzi's testimony that he kept generic Lortab and generic Soma pills for his back pain inside one of the locked safes, which were taken to the police station and not opened until after he was arrested. According to the evidence technician's report, however, the 32 pills were not generic Lortab and generic Soma, but instead were dicyclomine and ranitidine hydrochloride. We take judicial notice that these drugs are used to treat irritable bowel syndrome and heartburn, respectively, *see Dicyclomine HCL*, WebMD, https://www.webmd.com/drugs/2/drug-5247/dicyclomine-oral/details (last

Cozzi's roommate, Michael Thompson, and Cozzi's girlfriend, Kara Antonoff, were home during the search. Thomas showed Thompson a photograph of the perpetrator taken at the crime scene. Thompson "could see from the picture it was not [Cozzi]," and explained to Thomas that the person in the photograph had "numerous tattoos up and down his arm," but Cozzi had "only one tattoo." Doc. 50-4 at 1. Even though Cozzi was standing right outside while his home was searched, there is no evidence that the detectives viewed or asked about Cozzi's tattoo. Cozzi testified that Thomas inquired about his tattoo only after arresting and taking him to the police station. Thomas does not dispute that Thompson told him about the tattoo discrepancy or that he failed to follow up on it before arresting Cozzi.

Thomas testified that during the search he showed Antonoff a photograph of the perpetrator, and she identified the person in the photograph as Cozzi. Antonoff disputed Thomas's testimony, however, admitting that she said Cozzi looked like the robber in the photograph, but explaining that she did so only after Cozzi had been arrested and taken to the police station. She denied being shown a

---

visited June 13, 2018); *Ranitidine Hcl Tablet*, WebMD, https://www.webmd.com/drugs/2/drug-4091-5250/ranitidine-oral/ranitidine-75-mg-oral/details (last visited June 13, 2018). Because the officers' discovery of the 32 pills during the search preceding Cozzi's arrest was not inconsistent with Cozzi's statement about the different type of pills he kept in the safe, there is no genuine dispute of fact that the plastic bag containing 32 pills was discovered before Cozzi's arrest.

photograph of the perpetrator before or during the search.  On review of summary judgment, we must credit her testimony over Thomas's.

Thomas arrested Cozzi and took him to the police station.  Cozzi was questioned and released the next day after Thomas was unable to "find something that could substantiate a warrant for his arrest."  Doc. 47-8 at 32-33.  Cozzi later sued Thomas, the City of Birmingham, and several other detectives, alleging, among other claims, a claim under 42 U.S.C. § 1983 for unlawful arrest in violation of the Fourth Amendment.  The district court granted summary judgment to the defendants on all claims except for the unlawful arrest claim against Thomas, denying Thomas qualified immunity on that claim.  This is Thomas's appeal from the denial of qualified immunity.

## II.    STANDARD OF REVIEW

We review the district court's denial of summary judgment *de novo*, viewing the facts in the light most favorable to the nonmovant, here, Cozzi.  *Hadley v. Gutierrez*, 526 F.3d 1324, 1328 (11th Cir. 2008).  "We then answer the legal question of whether the defendant[] [is] entitled to qualified immunity under that version of the facts."  *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002) (internal quotation marks omitted).

### III.    DISCUSSION

The only issue before us is whether Thomas is entitled to qualified immunity on Cozzi's claim that Thomas violated his Fourth Amendment right to be free from unlawful arrest.  A government official asserting a qualified immunity defense bears the initial burden of showing "he was acting within his discretionary authority."  *Id.* at 1194.  Here, it is undisputed that Thomas was acting within his discretionary authority while arresting Cozzi.  Thus, the burden shifts to Cozzi to show that, when we view the facts in his favor, (1) Thomas violated his constitutional right, and (2) this right was clearly established at the time of the alleged violation.  *Hadley*, 526 F.3d at 1329.  Viewing the facts in the light most favorable to Cozzi, we agree with the district court that the arrest violated his clearly established constitutional right.

A warrantless arrest is constitutional under the Fourth Amendment only when it is made with probable cause.  *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). Probable cause exists "when the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Lee*, 284 F.3d at 1195 (internal quotation marks omitted).  In the context of § 1983 claims, however, an officer may be entitled to qualified immunity even if there was no actual

7

probable cause for the arrest; instead, an officer who raises a qualified immunity defense will prevail if there was arguable probable cause. *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003).

"Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendant could have believed that probable cause existed to arrest." *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010) (internal quotation marks omitted). Importantly, in evaluating probable cause, an officer may not "unreasonably disregard[] certain pieces of evidence" by "choos[ing] to ignore information that has been offered to him or her" or "elect[ing] not to obtain easily discoverable facts" that might tend to exculpate a suspect. *Kingsland v. City of Miami*, 382 F.3d 1220, 1229, 1233 (11th Cir. 2004); *see Carter v. Butts Cty.*, 821 F.3d 1310, 1321 (11th Cir. 2016) (explaining that "no reasonable officer with the information that was readily available to [defendant] at the time he arrested [p]laintiffs could have believed that he had probable cause to arrest them for burglary, criminal trespass, or theft," where defendant ignored documentation that plaintiffs attempted to present to him establishing that they were authorized to be on the property); *see also Sevigny v. Dicksey*, 846 F.2d 953, 957 n.5 (4th Cir. 1988) ("Objective inquiry into the reasonableness of an officer's perception of the critical facts leading to an arrest . . . must charge him with possession of all the information *reasonably*

*discoverable* by an officer acting reasonably under the circumstances." (emphasis added) (citation omitted)); *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986) ("A police officer may not close her or his eyes to facts that would help clarify the circumstances of an arrest.").

Thomas admits that he released Cozzi because he could not "find something that could substantiate a warrant for [Cozzi's] arrest," Doc. 47-8 at 32-33, but he argues that the following information established arguable probable cause for Cozzi's arrest:  (1) an anonymous tip from the *Crime Stoppers* program identifying Cozzi as resembling the subject in the surveillance video; (2) a tip from a confidential informant similarly identifying Cozzi as resembling the perpetrator in the video; (3) corroboration of "sufficiently detailed" information from the informant's tip "to lead a reasonable officer to believe that the informant knew Cozzi;"[4] and (4) a plastic bag containing 32 loose pills found in Cozzi's home. Appellant's Br. at 17.

Whether a reasonable officer could have believed he had probable cause to arrest "depends on the totality of the circumstances," *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003)), and Thomas's argument fails to account for all of the relevant

---

[4] Thomas points to the following details:  "The address and vehicle description were accurate, and Cozzi's appearance roughly aligned with the witness descriptions."  Appellant's Br. at 17.

circumstances.  Most significantly, before the arrest Thomas received easily

verifiable exculpatory information from Thompson—that Cozzi's single tattoo did

not match the multiple tattoos visible on the perpetrator in the crime scene

photograph that Thomas showed Thompson.  Despite receiving this information,

Thomas failed to look at or inquire about the tattoo before arresting Cozzi.  When

we add these facts to the weak evidence pointing to Cozzi as the perpetrator, we

conclude that, under the totality of the circumstances, Thomas lacked arguable

probable cause to arrest him.

Our review of the totality of the circumstances begins with the two tips

indicating that Cozzi resembled the perpetrator in the *Crime Stoppers* video.  Tips

may contribute to a probable cause determination, but in assigning probative

weight to such tips, courts must assess the totality of the circumstances

surrounding them, including the tips' reliability.  *See Illinois v. Gates*, 462 U.S.

213, 230-32 (1983).  Thomas admits that he had no knowledge about the reliability

of either the anonymous tipster or the confidential informant, but he argues that he

was entitled to rely on the tips because they corroborated one other.[5]  We agree

---

[5] Thomas also argues that he could assume the informant was reliable because the
information was passed to him through another law enforcement officer, although from a
different jurisdiction.  We disagree.  First, there is no evidence in the record that the Jefferson
County officer told Thomas that the informant was reliable or had previously provided
trustworthy information.  Without at least an assertion of reliability from the law enforcement
officer who relayed the tip, Thomas had no basis for assuming that the tip was reliable.  Second,
even if Thomas had been assured that the informant was reliable, "a bald assertion that [a
confidential informant] is a reliable informant" is entitled to very little weight when determining

that to the extent both tips identified Cozzi as resembling the perpetrator in the *Crime Stoppers* video, the tips corroborated one another. *See United States v. Martin*, 615 F.2d 318, 326 (5th Cir. 1980) ("[W]here informers give tips that substantially corroborate each other that factor helps establish the reliability of the tips.").[6] The probative value of this corroboration is relatively low, however. First, since one tip was anonymous, it is possible that the two tips were from a single source. Second, even if they were not, the tips corroborated only that Cozzi *resembled* the perpetrator. In addition, Thomas knew that Cozzi was not the only person who resembled the perpetrator: two eyewitnesses had identified a different man, James Hill, in a photo lineup. Although Thomas reasonably eliminated Hill as a suspect because Hill was incarcerated when the crimes took place, these eyewitness identifications of someone other than Cozzi tended to undermine the probative value of the tips.

Thomas adds that other information corroborated by law enforcement "was sufficiently detailed to lead a reasonable officer to believe that the informant knew Cozzi." Appellant's Br. at 17. "[W]hen . . . the information [supplied in an anonymous tip] is sufficiently detailed as to remove suspicion of rumor or revenge;

---

probable cause. *United States v. Foree*, 43 F.3d 1572, 1575 (11th Cir. 1995) (internal quotation marks omitted).

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

and that information is verified through independent investigation . . . the cumulative effect of all information" may establish probable cause. *United States v. Rollins*, 699 F.2d 530, 533 (11th Cir. 1983) (emphasis omitted). But the nature of the information matters: law enforcement's corroboration of innocent and "presently observable facts" may be insufficient to establish reasonable suspicion, much less probable cause. *United States v. Lee*, 68 F.3d 1267, 1271 (11th Cir. 1995). As the Supreme Court has explained, "[a]n accurate description of a subject's readily observable location and appearance is of course reliable in this limited sense: It will help the police correctly identify the person whom the tipster means to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity." *Florida v. J.L.*, 529 U.S. 266, 272 (2000).

Here the corroborated information on which Thomas relies to establish arguable probable cause is Cozzi's address and the description of his vehicle.[7] True, the officers verified this information from the informant's tip, but a person's address and type of vehicle are quintessential examples of innocent and easily

---

[7] Thomas also argues, in a single sentence, that law enforcement corroborated that Cozzi's appearance "roughly aligned with the witness descriptions." Appellant's Br. at 17. But Thomas provides no citation to the record to support this assertion, as required under the Federal Rules of Appellate Procedure. *See* Fed. R. App. P. 28(a)(8)(A) ("The appellant's brief must contain . . . appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies . . . ."). Assuming, though, for the sake of argument that Cozzi's appearance "roughly aligned" with the perpetrator's, this information adds nothing to the tipsters' information that Cozzi resembled the perpetrator.

observable facts. *See Lee*, 68 F.3d at 1271 (explaining that corroboration of details such as the defendant's "description, license plate, and location of [his] car" were "presently observable facts" that may be insufficient to establish reasonable suspicion). At most, the corroboration of Cozzi's address and vehicle description tended to show that the informant in fact meant to identify Cozzi as the person who resembled the perpetrator, not that Cozzi in fact committed the crimes. *See J.L.*, 529 U.S. at 272. Indeed, Thomas appears to concede that the officer's verification of Cozzi's address and the description of his vehicle showed only that "the informant knew Cozzi." Appellant's Br. at 17. Law enforcement had no information connecting Cozzi to the crimes beyond what was contained in the tips themselves—that the tipsters believed Cozzi resembled the perpetrator in the *Crime Stoppers* video.

Lastly, Thomas points to the plastic bag with 32 loose pills found during the search of Cozzi's home as contributing to arguable probable cause. Initially, we note that the evidence technician's report identified the pills as dicyclomine and ranitidine hydrochloride—not the type of pills obtained in the robbery, alprazolam and buprenorphine. We acknowledge, though, that at the time of Cozzi's arrest Thomas had not yet determined what type of pills were in the plastic bag. Nevertheless, the plastic bag of 32 pills did not match what the perpetrator obtained at the crime scene—a Walgreens bag with two pill bottles containing a

total of six pills.[8]  Common experience tells us that many people, most innocent of any crime, keep pills in plastic bags, whether for traveling, storage, or convenience.  The bag with 32 pills simply was not a smoking gun upon which a reasonable officer would rely, without more, to establish probable cause that Cozzi had committed the crimes.  To be fair, Thomas might reasonably have suspected that Cozzi had combined the six pills taken from the robbery with other pills, but at most the discovery of the 32 pills gave Thomas reason to continue investigating.  Rather than immediately arresting Cozzi, Thomas could, for example, have asked the eyewitnesses to look at another lineup with Cozzi's photograph included, tested the pills in the bag to determine whether they matched those taken from the pharmacy, or attempted to speak with Cozzi about the pills.  But Thomas did no further investigation at all.

Having discussed the facts that Thomas contends gave him arguable probable cause to arrest Cozzi, we note what the search did not reveal:  clothing that matched the perpetrator's, any threatening note resembling what the perpetrator presented at the pharmacies, a face mask, two pill bottles containing a total of six pills, a Walgreens bag, or anything else connecting Cozzi to the crimes. Thomas does not argue otherwise.

---

[8] Thomas suggests that the perpetrator obtained six pills from the Walgreens and two other bottles containing an unknown quantity of pills from the Rite Aid, but he misreads the record.  According to the police reports and witness statements in evidence, the perpetrator obtained two pill bottles containing a total of six pills from the Walgreens and nothing from the Rite Aid.

14

Considering now the totality of the circumstances, we ask "whether reasonable officers in the same circumstances and possessing the same knowledge as [Thomas] could have believed that probable cause existed to arrest" Cozzi. *Kingsland*, 382 F.3d at 1232 (internal quotation marks omitted). We need not decide whether the evidence Thomas possessed—the statements of two tipsters that Cozzi resembled the perpetrator shown in the *Crime Stoppers* video, confirmation that the informant had accurately provided Cozzi's address and a description of his vehicle, and a plastic bag with 32 pills found inside Cozzi's home—was sufficient to establish arguable probable cause because we must also consider the information tending to exculpate Cozzi that was available to Thomas when he made the arrest. Thomas had been told the readily verifiable exculpatory fact that the perpetrator's multiple tattoos did not match Cozzi's single tattoo. And setting aside the 32 pills we have already discussed, the search of his residence had failed to turn up even arguable evidence of the robberies.

Of course, "a police officer is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest," but the officer may not turn a blind eye to evidence suggesting that a suspect is innocent by "choos[ing] to ignore information that has been offered to him or her" or by "elect[ing] not to obtain easily discoverable facts." *Id.* at 1229 (internal quotation marks omitted). Viewing the facts in the light most favorable to Cozzi, Thompson

15

told Thomas that Cozzi could not have been the perpetrator because Cozzi did not have multiple tattoos like the perpetrator in the photograph.[9]

Despite having been given plainly exculpatory and easily verifiable information, Thomas did not look at Cozzi's tattoo before arresting him.  Under our precedent, this failure was unreasonable.  Where a police officer "unreasonably disregarded certain pieces of evidence to establish probable cause or arguable probable cause, . . . reasonable officers in the same circumstances and possessing the same knowledge as the [officer] could not have believed that probable cause existed to arrest the plaintiff."  *Id.* at 1233.  With Cozzi handcuffed and standing right outside the house when Thompson told Thomas about the tattoo discrepancy, Thomas "unreasonably disregarded" evidence establishing that Cozzi was not the perpetrator of the crimes.  *Id.*  Under the totality of the circumstances, Thomas therefore lacked arguable probable cause to arrest Cozzi.

Because Cozzi was arrested without arguable probable cause, "[t]he second qualified immunity inquiry is, in the context of this case, straightforward:  our binding precedent clearly established, at the time of [Cozzi's] arrest, that an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures."  *Skop v. City of Atlanta*, 485 F.3d 1130, 1143-44 (11th Cir. 2007).  In arresting Cozzi without arguable probable

---

[9] The anonymous tipster had also told the police that Cozzi had *a* tattoo.

16

cause, Thomas violated clearly established law and thus is not entitled to qualified immunity.

## IV.    CONCLUSION

Viewing the facts in the light most favorable to Cozzi, we conclude that at this stage Cozzi has shown that Thomas violated his clearly established Fourth Amendment right to be free from unlawful arrest.  We thus affirm the district court's denial of qualified immunity on this claim.

**AFFIRMED.**