[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-11502
Non-Argument Calendar
_____

D.C. Docket No. 1:19-cv-00813-SDG

JANE DOE, by next friend
James Doe,
JOHN DOE, by next friend
James Doe,

                                            Plaintiffs-Appellees,

versus

JONATHAN LEACH,

                                            Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 30, 2020)

Before LAGOA, BRASHER, and ANDERSON, Circuit Judges.

PER CURIAM:

Detective Jonathan Leach appeals the district court's denial of his motion to

dismiss, arguing that the district court erred because he had probable cause to arrest

and prosecute Appellee John Doe, and even if he did not, qualified immunity shields

him from liability. Accepting all allegations in John's complaint and taking all inferences in his favor—as we must—we conclude that John has pleaded sufficient facts to state a plausible claim for false arrest and malicious prosecution under 42 U.S.C. § 1983. He has also pleaded sufficient facts to show that Leach is not entitled to qualified immunity at this stage of the litigation. Accordingly, we affirm.

## I.    BACKGROUND

John and Jane Doe are twins who both have autism. Their autism creates communication issues, such as difficulty providing clear narratives and using appropriate words to describe events. At the time relevant to this case, they were high school seniors. Jane, whose autism is more severe, received special education services, and John was in a small classroom environment. In January 2017, two other high school students—KE and TB—began to bully John, threatening to publish a video of John having sex with his sister if he did not pay them.

After learning of a rumor that there was a video of John having sex with his sister, the school opened an investigation. During that investigation, John signed a written statement asserting that no video existed and that he was being blackmailed. He also provided text messages showing that the bullies were demanding money. Both bullies later admitted to blackmailing John. They stated that John had shown them a video of two people having sex the previous school year and that, according to John, those people were him and his sister. Neither bully had the video, nor was

it on John's phone. The school also talked to Jane, who stated that she had not made any video with John. She further stated that John had never made her do anything that she did not want to do or anything that she thought was wrong or made her feel uncomfortable. The school concluded that John had not done anything wrong and no video existed. It disciplined KE for blackmailing John. Nonetheless, the school reported the matter to the Department of Family and Children Services.

On referral from the Department, Detective Leach investigated for potential crimes. The school provided Leach with extensive notes of its investigation and conclusion that John was being taken advantage of by bullies and that no video existed. Leach re-interviewed the bullies. They made new statements that revealed some contradictions about the purported video; one claimed the video was of oral sex and the other of "actual sex." TB also lied in this interview by denying that he had extorted John. Leach also interviewed Jane, noting from the outset that she "appeared to be severely autistic." Throughout the interview, Jane was nervous and scared. She asked if she was going to jail and cried. In response to Leach's questions, she described incidents in which John would lay on her and stated that they were hugging. She also stated that she and John had "attached" to each other. When asked what she meant by "attached," she stated that John hugged her. She used the words "attach" and "hug" interchangeably throughout the interview. She also stated that both she and John had been clothed during the hugs; she could not remember when

3

they were, except that they were "a while ago"; she had not seen John's penis since she was young; and John had never used his phone while they were "attached."

At Leach's request, John's father took John to Gwinnett Police Headquarters to meet with Leach. While waiting to be interviewed, John—under the belief that he was speaking privately to his father—stated that he had never touched or done anything to Jane and that the supposed video must be a fake. The conversation was covertly recorded, and Leach heard the statements. During the formal interview, John maintained his innocence and invoked his right to a lawyer.

Instead of interviewing John with a lawyer present, Leach arrested John for felony rape and felony incest. A magistrate judge later issued a warrant for the arrest. John was held in jail for approximately two months and then released on bond. After his release, he had to stay at a friend's house because the conditions of his bond prohibited him from living in the house with Jane. About two months later, all charges against John were administratively dismissed.

On February 15, 2019, John and Jane Doe filed this action. Jane raised claims against Gwinnett County and the Gwinnett County School District under Section II the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Section 1983. Those claims remain pending below. John brought a Section 1983 claim against Detective Leach, alleging that Leach violated his Fourth Amendment rights by falsely arresting and maliciously prosecuting him. Leach moved to dismiss

4

John's claim, and the district court denied that motion. Leach timely appealed to this Court, and the issue has been fully briefed.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's denial of qualified immunity. *Sebastian v. Ortiz*, 918 F.3d 1301, 1307 (11th Cir. 2019). Like the district court, we accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id.* When a qualified immunity defense is denied at the motion to dismiss stage, "appellate review is 'limited to the four corners of the complaint,'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (citation omitted), which "must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face," *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## III.    DISCUSSION

John Doe seeks to hold Detective Leach liable under 42 U.S.C. § 1983 for Fourth Amendment violations of false arrest and malicious prosecution. Leach argues that the district court should have granted his motion to dismiss because (1) he had probable cause to arrest John for rape and incest, which bars false arrest and malicious prosecution claims; and (2) even if there was not probable cause, he is entitled to qualified immunity. John counters that, based on the allegations in the complaint, (1) there was no probable cause to arrest or charge him for rape or incest;

5

and (2) Leach is not otherwise entitled to qualified immunity. Because this case is at the motion-to-dismiss stage, the district court correctly held that Leach is not currently entitled to qualified immunity and correctly denied his motion. Of course, Leach may raise his qualified immunity defense again at a later stage based on a complete record and under a different standard of review.

Cabining our review to the four corners of the complaint, taking all its allegations as true, and drawing all reasonable inferences in favor of John, John has stated a plausible claim that Leach lacked probable cause to arrest or prosecute John with rape and incest.[1] "[P]robable cause requires that 'the facts and circumstances *within the officer's knowledge,* of which he or she has *reasonably trustworthy information,* would cause a *prudent* person to believe, *under the circumstances shown,* that the suspect has committed … an offense.'" *Kingsland v. City of Miami*, 382 F.3d 1220, 1231 n.11 (11th Cir. 2004), *abrogated on other grounds by Aguirre*, 965 F.3d 1147. To commit rape in Georgia, a male must penetrate the female sex organ with his sex organ against the female's will. O.C.G.A. § 16-6-1. To be guilty of incest, a person must commit any sexual act, including those involving the sex

---

[1] John's false arrest and malicious prosecution claims implicate slightly different standards. A false arrest claim requires a plaintiff to show that there was no probable cause to arrest him for "any crime." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020). A malicious prosecution claim requires a plaintiff to show that there was no probable cause for one or more of the charged offenses. *Id.* But the difference does not matter at this point in the case.

organs of one person and the mouth or anus of the other person, with a blood relative. O.C.G.A. § 16-6-22.

Here, based on the reasonably trustworthy information that Leach knew when he arrested John, a prudent person would not have believed that John had committed rape or incest. Based on the complaint, Leach knew the following facts when he arrested John:

(1)     two students had bullied John by demanding payment for not releasing a video of him and his sister purportedly having sex;

(2)     those two bullies claimed that John had shown them a video the previous school year and had told them that the girl in the video was his sister;

(3)     John had given a school administrator a written and signed statement swearing that there was no video;

(4)     the school had not found a video on John's or the bullies' phones;

(5)     Jane had told the school multiple times that she never made a video with John and that he had never "made her do anything she did not want to do or that she thought was wrong or made her uncomfortable";

(6)     the school had concluded that the video was likely not real, had found John innocent, and had punished one of the bullies for extorting him;

(7)     the bullies had given contradictory statements about what the alleged video portrayed, could not explain why they waited a year after seeing the video to start blackmailing John, and could not identify anyone in the alleged video as John or Jane;

(8)     one bully clearly lied to Leach during his interview;

7

(9)     Jane "appeared to be severely autistic";

(10)    During Leach's questioning, Jane stated that sometimes John laid on her, that she and John had hugged, and that she and John "attached" to each other, which she explained meant that she and John were hugging, using the terms "attach" and "hug" interchangeably;

(11)    Jane stated that both she and John were clothed during those encounters, that they had happened "a while ago," and that she had not seen John's penis since she was very young; and

(12)    John, during a covertly recorded conversation with his father, stated that he had never touched or done anything to Jane and that the bullies must have made a fake video.

Based on those known facts, Leach lacked probable cause to arrest John.

To support a finding of probable cause, Leach relies on the bullies' assertions that John had told them the previous year that he had sex with his sister. But the veracity of those statements is questionable given the bullies' motivations, their contradictory and inexplicable testimony, and the lack of any video. Considered in the light most favorable to John at this early stage of the proceedings, those statements, taken with the information Leach knew about their credibility, would not cause a prudent officer to believe that John had committed rape or incest. Nor would Jane's statements, taken as a whole, support a finding of probable cause. Although she stated that she "attached" to John, she used that term interchangeably with "hugged" throughout the interview, stated that they were both clothed when they hugged, and revealed that she had not seen John's penis since she was very young.

8

Even in conjunction with the bullies' comments, Jane's statements would not cause a prudent officer to believe that John had committed rape or incest. Leach did not have probable cause to arrest John.

None of our cases that Leach cites support a finding of probable cause in this case. For instance, in *Lowe v. Aldridge*, 958 F.2d 1565 (11th Cir. 1992), the detective relied on the testimony of three children, interpreted with the help of a psychotherapist, to find probable cause. That testimony was "excruciatingly detailed," and one child "used anatomically correct dolls to demonstrate how she had been sexually assaulted." *Lowe*, 958 F.2d at 1568. Not so here. Here, Jane never describes anything a reasonable person would construe as rape; Leach relies only on Jane's use of the word "attached," which she used interchangeably with "hugged" throughout the interview. *See also Rankin v. Evans*, 133 F.3d 1425, 1429–30 (11th Cir. 1998) (finding sufficient facts to establish probable cause despite some inconsistencies in the four-year-old's statements where the child had stated that the man had made "a hole in [her] bottom" and put "his fingers in [her] bottom and it pinched and it feels bad" and where a physical examination had shown signs of possible sexual abuse); *Marx v. Gumbinner*, 905 F.2d 1503, 1506 (11th Cir. 1990) (finding probable cause to arrest the father where the daughter had clearly been raped and stated that "Daddy did this to me" and "Daddy left me outside to sleep outside"). In this case, two investigations—one by the school and one by Leach—did not

9

uncover any credible evidence that John had committed a rape or incest. We therefore conclude that John has pleaded sufficient facts to state a plausible claim that Leach lacked probable cause to arrest John for rape and incest.

We now apply the above analysis to the question of qualified immunity. At this stage of the litigation, qualified immunity does not shield Leach. An officer is not entitled to qualified immunity if his actions (1) violated a constitutional right; and (2) "the unlawfulness of [his] conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) (citation omitted). As explained above, John has met the first prong of this qualified immunity test by stating a plausible claim that Leach arrested him without probable cause and thereby violated his Fourth Amendment rights. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1137, 1143–45 (11th Cir. 2007); *Kingsland*, 382 F.3d at 1232. Under the second prong, it is clearly established that an officer cannot arrest someone or initiate a prosecution in the absence of probable cause. *See Skop*, 485 F.3d at 1143-45.

Leach argues that, even if he did not have actual probable cause, he is entitled to qualified immunity because he had arguable probable cause. *Skop*, 485 F.3d at 1137. Assuming without deciding that his reasoning is correct, Leach's argument still fails because he did not have arguable probable cause on the current record. "Arguable probable cause exists where reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendant could have

10

believed that probable cause existed to arrest." *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1294 (11th Cir. 2018). It is, therefore, an "objective reasonableness" standard. *Rushing v. Parker*, 599 F.3d 1263, 1266 (11th Cir. 2010). On the current record, any reasonable officer knowing the facts that Leach knew would have concluded that he lacked probable cause to arrest John for rape or incest.

Leach argues that the magistrate judge's warrant—which was issued after the arrest—proves that his probable-cause assessment was objectively reasonable because "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). But, at this point in the litigation, we do not know what Leach said in the warrant affidavit or the basis upon which the warrant was issued. John alleges that "Detective Leach failed to set forth in his warrant affidavit sufficient facts to enable the magistrate to make an independent finding of probable case" or even to "articulate the basis for Detective Leach's belief that John committed the alleged crime." Construing this allegation in John's favor, one reasonable inference is that the facts in the arrest warrant application were misrepresented. *See Aguirre*, 965 F.3d at 1168–69 (rejecting qualified immunity defense when there were misstatements in the arrest-warrant application). Another reasonable inference is that a "reasonably well-trained officer . . . would have known that his affidavit failed to establish probable cause and that

11

he should not have applied for the warrant," making Leach's application "not objectively reasonable." *Malley v. Briggs*, 475 U.S. 335, 345 (1986); *see also Williams*, 965 F.3d at 1165. It is premature for Leach to rely on the post-arrest warrant as evidence that his conduct was objectively reasonable.

Leach may, of course, raise this qualified immunity defense again. But as the case stands at the motion-to-dismiss stage, the district court correctly concluded that Leach is not entitled to qualified immunity.

## IV.    CONCLUSION

We **AFFIRM** the district court's denial of Leach's motion to dismiss.