[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-10642
Non-Argument Calendar

_____

D.C. Docket No. 3:17-cv-00132-LC-HTC

THEODORE J. THOMPSON,

Plaintiff-Appellant,

versus

MICHAEL A. ADKINSON,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 28, 2021)

Before MARTIN, JILL PRYOR and BRANCH, Circuit Judges.

PER CURIAM:

While plaintiff Theodore Thompson was held as a pretrial detainee at the Walton County Jail, a nurse who was distributing prescription medication accused Thompson of "cheeking" pills—trying to hide them in his mouth to save them for some other purpose—prescribed to him to treat his schizophrenia and bipolar disorder. Although Thompson denied cheeking any pills, the nurse discontinued his medications. After going without medication for several days, Thompson reported to jail officials that he was experiencing auditory hallucinations and suicidal ideation and begged them for his medications. Still, the jail did not budge. A few days later, in a non-fatal suicide attempt, Thompson cut his wrists more than a dozen times.

Thompson, proceeding *pro se*, sued Michael Adkinson, Sheriff of Walton County, bringing a claim for deliberate indifference and alleging that jail employees were acting pursuant to Adkinson's policy when they discontinued his prescription medications. The district court granted summary judgment to Adkinson, concluding, among other things, that Thompson had failed to establish a causal connection between Adkinson's policy and the discontinuation of Thompson's medications. Viewing the evidence in the light most favorable to Thompson, we nevertheless cannot say that jail employees were acting pursuant to Adkinson's policy when they stopped Thompson's medications. We therefore conclude that Thompson failed to establish the requisite causal connection between

2

the policy and the denial of his medications and affirm the grant of summary judgment to Adkinson.

## I.    FACTUAL BACKGROUND[1]

Thompson was arrested in Escambia County, Florida, and held in the Escambia County Jail as a pretrial detainee. Before his arrest, Thompson, who has a history of severe auditory hallucinations and suicidal ideation, was diagnosed with schizophrenia, bipolar disorder, and depression. For decades, he had relied on medications to treat these conditions.

Upon arriving at the Escambia County Jail, Thompson was seen by Dr. Lawrence Mobley, a psychiatrist. Mobley reviewed Thompson's medical records and prescribed him Seroquel, Trazodone, Prozac, and Neurontin. While held as a pretrial detainee, Thompson regularly saw Mobley or another psychiatrist.

About two months after Thompson was arrested, the Escambia County Jail became short on space. To alleviate the overcrowding, Thompson and a group of other inmates were moved to the Walton County Jail, which Adkinson operated. When Thompson arrived at the jail, he learned there was no psychiatrist on staff there. As part of the intake process at the jail, he signed a form from the Walton

---

[1] On review of the grant of a motion for summary judgment, we view the facts in the light most favorable to the non-movant, here, Thompson. *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1291 n.1 (11th Cir. 2018). In recounting the facts here, we resolve any disputes of fact in Thompson's favor. *Id.*

County Sheriff's Office authorizing the jail to provide him with health care and medication. By signing the form, Thompson indicated he understood that when medication was given, it was to be "taken immediately," and promised not to "hold any medication to take at a later time." Doc. 81-3 at 2.[2] He indicated he understood that any "inmates attempting to palm, check[,] or hold any medication[s] will have [the medications] discontinued until they request to see the doctor." *Id.* Cheeking pills is a violation of the policy. There was one important limitation on this policy: if an inmate was found attempting to hold medication needed for a "life[-]threatening" condition, the jail would continue to give the medication "in another manner until [the inmate could be] seen by [a] doctor." *Id.*

For his first month at the Walton County Jail, Thompson received his medication as prescribed. But after Thompson had an incident with nurse Kaci Tiller, most of his medications were discontinued. According to Tiller, one evening when she gave Thompson his pills, he tried to hide them under his tongue and cheek the pills.[3] Tiller had to ask Thompson several times to swallow them. Because Thompson refused to swallow the pills, Tiller told him that based on "policy of Walker County Jail," he would no longer receive his medications. Doc. 67 at 6.

---

[2] "Doc." numbers refer to the district court's docket entries.

[3] Thompson admits that inmates sometimes cheeked medications such as Seroquel to sell the pills to other inmates.

Thompson disputes Tiller's account of the incident. He says that he swallowed his pills that night and Tiller made up the story that he cheeked them. According to Thompson, another inmate, known as "Red," told Thompson to cheek his Seroquel pills and then sell or trade them. Thompson says that when he refused, Red complained to Tiller who, as a favor to Red, falsely accused Thompson of cheeking and then discontinued his medications.

After this incident, the jail stopped providing Thompson with Seroquel, Trazodone, and Neurontin. Thompson challenged the jail's decision, saying he was being denied "life-saving meds." Doc. 81-14 at 19. Dr. James Sheppard, the jail's medical director, approved the decision to discontinue these prescriptions.[4] The jail did continue to provide Prozac to Thompson, but he refused to take it.

Without his medications, Thompson's condition rapidly deteriorated. Thompson begged to be put back on his medications, reporting that he was experiencing auditory hallucinations and suicidal ideation and also was unable to eat or sleep. Thompson still did not receive his medications.

---

[4] Thompson says that because Sheppard was not a psychiatrist, he was not authorized to prescribe Seroquel, Trazodone, Prozac, or Neurontin. But Thompson has presented no evidence to support his assertion that Sheppard, a physician, could not prescribe the medications. To the contrary, the unrefuted record evidence reflects that Sheppard was authorized to prescribe them.

5

After about 12 days without medication, Thompson found a razor blade in his cell and used it to slice his left wrist repeatedly.  Although jail personnel treated his injuries, it was another week before the jail restarted Thompson's medications.

Thompson, proceeding *pro se*, sued Adkinson and Tiller, bringing § 1983 claims for deliberate indifference.  Thompson alleged that the defendants unlawfully denied him "life-saving medications," which he needed to treat his schizophrenia and bipolar disorder and to avoid experiencing auditory hallucinations and suicidal ideation.  Doc. 67 at 6.  Because Tiller was never served, the district court dismissed Thompson's claim against her.  *See* Fed. R. Civ. P. 4(m).[5]  The case against Adkinson proceeded.

Adkinson filed a motion for summary judgment.  He argued that Thompson had failed to follow the jail's grievance procedures and thus had not exhausted his administrative remedies before filing suit.  In addition, Adkinson argued that he was entitled to summary judgment because Thompson could not establish a causal connection between Adkinson's conduct as a supervisor and the denial of Thompson's medication.  Adkinson argued that, viewing the evidence in the light most favorable to Thompson, Thompson's medications were discontinued not

---

[5] Because Thompson has not appealed the district court's order dismissing the deliberate indifference claim against Tiller, we do not discuss it further.

because of Adkinson's policy prohibiting cheeking but because of Tiller's alleged personal vendetta against Thompson.

The magistrate judge issued a report and recommendation that the court grant the summary judgment motion. The magistrate judge recommended that the lawsuit be dismissed because Thompson failed to exhaust his administrative remedies. In the alternative, the magistrate judge recommended that the court grant summary judgment because Thompson could not show a causal connection between Adkinson's conduct and the denial of the medications.

Thompson objected to the magistrate judge's report and recommendation. After considering the objection, the district court adopted the recommendation and granted Adkinson's motion for summary judgment. This is Thompson's appeal.

## II.    STANDARD OF REVIEW

"We review *de novo* the district court's grant of summary judgment, construing the facts and drawing all reasonable inferences in favor of the nonmoving party." *Smelter v. S. Home Care Servs., Inc.*, 904 F.3d 1276, 1284 (11th Cir. 2018). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict

7

for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and are liberally construed. *Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003). But to defeat a summary judgment motion a *pro se* litigant nonetheless must meet the "essential burden under [the] summary judgment standard[ ]" of establishing that there is a genuine dispute as to a material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

## III.    ANALYSIS

Deliberate indifference to the serious medical needs of a convicted inmate violates the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Similarly, deliberate indifference to the serious medical needs of a pretrial detainee violates the Fourteenth Amendment. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1574 (11th Cir. 1985).[6] To prevail on a deliberate indifference claim, a plaintiff must carry three burdens. First, she must satisfy an "objective component" by showing that "she had a serious medical need." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007). Second, she must satisfy a "subjective component" by showing

---

[6] Because the legal standards we apply under the Fourteenth Amendment are identical to those we apply under the Eighth Amendment, we may consider cases concerning deliberate indifference claims arising under the Eighth Amendment when considering Thompson's Fourteenth Amendment claim. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

that the jail "official acted with deliberate indifference to her serious medical need." *Id.* Third, "as with any tort claim, she must show that the injury was caused by the defendant's wrongful conduct." *Id.* In this appeal, we are concerned with the third prong.

Supervisory officials, like Adkinson, are "not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks omitted). A supervisor may be held liable under § 1983 only when the supervisor personally participates in the alleged unconstitutional conduct or there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation. *Braddy v. Fla. Dep't of Labor & Emp. Sec.*, 133 F.3d 797, 802 (11th Cir. 1998). To establish the requisite causal connection, a plaintiff must show one of these things: a history of widespread abuse that put the supervisor on notice of the need to correct the alleged deprivation and the supervisor failed to do so, the supervisor adopted an improper custom or policy that led to the deliberate indifference, or the supervisor directed subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so. *Douglas v. Yates*, 535 F.3d 1316, 1322 (11th Cir. 2008).

9

Thompson claims deliberate indifference to his serious medical needs based on the denial of his medication. Because Thompson does not contend that Adkinson personally participated in the challenged conduct, we look to whether there was a causal connection between Adkinson's acts as a supervising official and the alleged constitutional deprivation. According to Thompson, a causal connection exists because Tiller was acting pursuant to Adkinson's policy when she discontinued the "life-saving" medication used to treat Thompson's bipolar disorder and schizophrenia. Appellant's Br. at 14.

We disagree that a causal connection exists here. Even viewing the evidence in the light most favorable to Thompson, no reasonable jury could find that Thompson's medications were discontinued as a result of Adkinson's policy prohibiting cheeking. It is true that the policy generally allowed jail employees to discontinue an inmate's medication when he was found to have cheeked a pill. But when an inmate cheeked a medication that was used to treat a life-threatening condition, the policy required the jail to continue to give the medication "in another manner until [the inmate could be] seen by [a] doctor." Doc. 81-3 at 2. Accepting Thompson's assertion that his medications were used to treat a life-threatening condition, we observe that the policy required jail employees to continue give Thompson his medications and did not authorize them to stop. Given this exception in the policy, we simply cannot say that Adkinson's policy

10

caused Thompson's injury.  *See Goodman v. Kimbrough*, 718 F.3d 1325, 1335

(11th Cir. 2013) (affirming grant of summary judgment to sheriff because pretrial

detainee failed to establish "an official action or policy . . . caused his injury" when

sheriff's written policy expressly forbade the individual officers' allegedly

unconstitutional actions that caused the detainee's injury).

A supervisor also may be held liable for deliberate indifference if the

plaintiff "show[s] that the defendant had actual or constructive notice of a flagrant,

persistent pattern of violations" of a policy and failed to stop it.  *Goebert*, 510 F.3d

at 1332 (internal quotation marks omitted).  But Thompson has come forward with

no evidence showing that Adkinson had direct knowledge that the policy was

being violated or that the misapplications were so widespread that constructive

knowledge may be attributed to him.  *See id.*[7]

Because Thompson has failed to establish a causal connection between

Adkinson's actions and the alleged constitutional deprivation, we conclude that

Thompson's supervisory liability claim fails as a matter of law.[8]

---

[7] Because the only defendant before us in this appeal is Adkinson, we have no occasion to address whether any jail employees acted with deliberate indifference.

[8] The district court also granted summary judgment on the alternative ground that Thompson failed to exhaust his administrative remedies.  We affirm on the basis that Thompson failed to establish the requisite causal connection between Adkinson's policy and the denial of his medication, so we need not and do not address the question of exhaustion.

## IV.    CONCLUSION

For the reasons set forth above, we affirm the district court's grant of summary judgment.

**AFFIRMED.**